**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY DAVENPORT, | Case No. 1:14-cv-00721-SMS |
| Plaintiff, | |
| v. | AMENDED ORDER AFFIRMING AGENCY'S DENIAL OF BENEFITS AND ORDERING JUDGMENT FOR COMMISSIONER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Betty Davenport seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act (42 U.S.C. § 301 *et seq.*) ("the Act").  The matter is before the Court on the parties' cross-briefs, which were submitted without oral argument to the Magistrate Judge.  Following a review of the record and applicable law, the Court affirms the decision of the Administrative Law Judge ("ALJ").

## I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND[1]

A.  *Procedural History*

On March 12, 2010, Plaintiff applied for disability insurance ("DI") benefits under Title

---

[1] The relevant facts herein are taken from the Administrative Record ("AR").

II[2] and for supplemental security income ("SSI") under Title XVI[3] of the Act.  AR 215-220.  Plaintiff alleged two different disability onset dates: March 1, 2010 with respect to DI, and February 6, 2006 with respect to SSI.   AR 215, 217.

Plaintiff's application for SSI was denied because she had too much income.  AR 132.  The Commissioner then denied Plaintiff's DI claim, finding she was not disabled.  AR 144.  Upon reconsideration, the Commissioner again denied Plaintiff's claim.  AR 151.   Plaintiff timely requested a hearing.  AR 157.  She appeared and testified before an ALJ, John Heyer ("first hearing").  Also at the hearing were Plaintiff's counsel, husband, and an impartial vocational expert (VE).  AR 85.  In a written decision, the ALJ found Plaintiff was not disabled under Title II of the Act ("first decision").  AR 115-122.  The Appeals Council granted Plaintiff's request for review based on new and material evidence.  The Council vacated the ALJ's first decision and remanded the case with instructions to the ALJ as follows: (1) address additional medical evidence, especially from Dr. Kyaw Swe, and assess the severity of Plaintiff's fibromyalgia (2) obtain additional evidence about Plaintiff, (3) give further consideration to Plaintiff's maximum residual functional capacity ("RFC"), and (4) if warranted, obtain supplemental evidence from a VE to clarify the effect of Plaintiff's limitations on her occupational base.   AR 128-129.

On remand, ALJ Heyer again presided over the hearing ("second hearing").  Also present were Plaintiff's counsel and an impartial VE, Jim Van Eck.  AR 61.  On May 13, 2013, the ALJ issued a written decision finding, again, that Plaintiff was not disabled under Title II of the Act ("second decision").  AR 21-29.  On March 25, 2014, the Council denied review of the ALJ's

---

[2] Plaintiff's DI application states she also applied for benefits under Part A of Title XVIII of the Act (i.e., Medicare).  AR 215.  "Title XVIII of the Social Security Act (the "Medicare Act," 42 U.S.C. §§ 1395–1395ccc) provides a federal health insurance program for elderly and disabled persons. Medicare Part A covers inpatient hospital services and certain related benefits (Sections 1395c– 1395i–4), and it is provided automatically for individuals entitled to Social Security retirement or disability benefits (Section 426)."  *Beverly Cmty. Hosp. Ass'n v. Belshe*, 132 F.3d 1259, 1262 (9th Cir. 1997) (internal footnote omitted).

[3] Plaintiff's SSI application states she also applied for any applicable medical assistance under Title XIX of the Act.  AR 217.

second decision, which became the Commissioner's final decision, and from which Plaintiff filed a timely complaint.  Doc. 1.

B.  *Factual Background*

Plaintiff was born on March 1, 1955.  AR 88.  In her disability report, Plaintiff claimed various medical conditions limited her ability to work.  Generally, these included chronic neck and back pain with radiculopathy, myofascial pain syndrome, paresthesia of the upper limb, osteoarthritis of the joints, carpal tunnel syndrome, and degeneration of the knee and spine.  AR 269.

1.  Plaintiff's Testimony

a.  *First Hearing*

Plaintiff testified that after working for fifteen years as a mortgage consultant for Union Bank of California, her neck and lower back issues caused her to leave on disability retirement.  AR 88-89.  A typical day for Plaintiff involved getting up at around 11 a.m. and sitting in the backyard under the sun or roaming around the house.  After some help getting dressed from her husband, the two would go out to lunch.  Plaintiff would then return home to watch television until bedtime, possibly making a trip to the living room or kitchen at some point.   She did not do any household chores, did not use a computer, did not go out, and had no hobbies.  AR 90-91.  Her medications made her feel sleepy, dizzy, and caused difficulty concentrating.  AR 93, 95.  Plaintiff was able to lift 10 pounds and sit, stand, and walk for 30 minutes.  AR 89-90.

When the ALJ questioned why a number of magnetic resonance imaging (MRI) tests and electromyographies (EMGs) did not reveal any major problems, Plaintiff explained that an EMG does not go deep enough to the reveal the exact problem.  AR 92.  She had eight epidural injections, but each time the injection alleviated the pain for two weeks at most.  AR 95.  Plaintiff did not work much of her last year at Union Bank.  AR 94.

### b. Second Hearing

Plaintiff testified that on a typical day, after waking up, she would have coffee and watch some television.  She and her husband would go out to lunch and run errands, where she would either remain in the car or go with him, and then come home to relax on her recliner.  She would also go to her doctors' appointments.  Plaintiff's exercise consisted of walking to the mailbox.  AR 67, 78.

Plaintiff's medications included Nortriptyline for treating headaches and pain; Celexa for treating fibromyalgia pain; Oxycodone for treating pain; Flexeril to relax the muscles; Gabapentin for treating nerve pain; Meloxicam for treating pain and inflammation; and Methotrexate for treating rheumatoid arthritis.  While helpful, the medications caused weight gain, constant dizziness, difficulty staying focused, confusion at times, nausea, sleepiness, and she no longer drives as a result.  AR 69, 78, 93-95, 65.  Gabapentin, in particular, made her very sleepy.  AR 94.  Despite the undesirable side effects, the medications helped diminish her pain greatly, bringing the pain level from "a nine" down "to about a five, maybe a six."  AR 69.

Plaintiff had been using a walker, at the suggestion of a physical therapist, for about nine months.  AR 73.  She also received steroid injections for her pain.  AR 74.  She has suffered from headaches at least three times a week, lasting nearly a day or more each time, for about five years.  AR 75-76.  Plaintiff experienced pain, to varying degrees, on a daily basis, causing her to spend three to four days out of the week lying on a recliner all day.  AR 78.  A good day meant spending three to four hours on a recliner.  AR 80.

### 2. Medical Evidence

As early as 2007, Kaiser physicians diagnosed Plaintiff with back pain and carpal tunnel syndrome.  AR 334, 336, 340.  While continuing to receive treatment from the Kaiser physicians—e.g., Drs. Jimmy Sio and Monika Gupta— for various conditions, Plaintiff also treated and consulted

with outside physicians.

Plaintiff was referred to Dr. Kevin Trinh for pain management beginning in July 2009.  AR 553.  Based on plaintiff's complaint of chronic neck and low back pain, Dr. Trinh discussed various treatment options, but Plaintiff stated she wished to be treated conservatively.  AR 554.  Dr. Trinh reported that an MRI of Plaintiff's lower lumbar spine taken in April 2009 showed slight disc signal and dorsal disc height changes at L3-L4, L4-L5 and L5-LS1, mild facet changes at multiple levels, and no significant stenosis.  An MRI taken in May 2009 showed mild degenerative changes and mild canal stenosis at multiple levels, mild to moderate bilateral foraminal stenosis at C5-C6, and multiple tiny disc protrusions at multiple levels.  AR 554.  Along with prescribing various medications, Dr. Trinh performed epidural injections on Plaintiff in February, April, June, July and December 2010, and May 2011.  AR 284, 551, 556, 601, 603, 699.

In Plaintiff's May 2010 Pain Questionnaire, she indicated feeling pain only on the left side of her body, that work brought on pain, and that she had been on medications for two to four years.  AR 283.  The medication side effects included the inability to focus, sleepiness, difficulty concentrating, clumsiness and dizziness.  AR 284.  She no surgery planned because "[d]octors say it won't work."  AR 284.  Plaintiff was able to walk for thirty minutes, stand for fifteen minutes, and sit for thirty minutes at a time.  She did no chores and relies on her husband for errands.  AR 285.

In June 2010, medical consultant G. Spellman performed a physical RFC assessment, finding that Plaintiff: could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk and sit for six hours in an eight-hour workday, push and/or pull, and could occasionally climb (never on ladder/rope/scaffolds) balance, stoop, kneel, crouch and crawl.  AR 570-571.  And has no manipulative, visual, communicative or environmental limitations.  AR 571-572.  In his case analysis, Dr. Spellman noted partial credibility, stating the "alleged persisting severity is not evident in the longitudinal treatment record showing normal gait and unremarkable or

detailed neurological exams[.]"  AR 575.

Also in June 2010, Dr. Trinh's referred Plaintiff to Dr. Majid Rahimifar, a surgeon.  AR 289-290, 588.  On examination, Plaintiff's results were generally positive: normal gait, normal deep tendon reflexes, normal sensory examination of bilateral upper and lower extremities, and normal muscle tone.  Dr. Rahimifar diagnosed Plaintiff with cervical spondylosis, degenerative disc disease at C5-C6, and left arm radiculopathy.  AR 589.

Dr. Gupta's treatment notes from August 2010 show chronic C7-8 radiculopathy on the left and very mild median neuropathy at the left wrist.  AR 713.  Her September 2010 notes show chronic multilevel cervical radiculopathy (C5-C8/T1) on the right, mild carpal tunnel at the right wrist, and nonlocalizing mild sensory ulnar neuropathy on the right.  AR 625.  An undated document shows Dr. Gupta also found chronic multilevel lumbar radiculopathy (L4-S1) on the left.  AR 584.

In September 2010, medical consultant A. Khong performed a physical RFC assessment with findings similar to Dr. Spellman's in June 2010.  AR 675.  Unlike Dr. Spellman, however, Dr. Khong found Plaintiff: could frequently balance, limited in reaching all directions but otherwise unlimited in handling, fingering and feeling.  AR 676.  He concluded that pain management records reflect normal function and that no intervention has been required for Plaintiff's hand complaints.  AR 680.

In November 2010, Dr. Rahimifar evaluated Plaintiff again and noted increased symptoms of low back pain radiating to the right leg with continued symptoms of cervical radiculopathy and arm entrapment neuropathy.  Because Plaintiff decided against surgery and wished to delay it as long as possible, Dr. Rahimifar continued with the conservative treatment.  AR 627.

Dr. Trinh completed a Medical Source Statement (a fill in the blank and check box form) in August 2011 and opined that Plaintiff could occasionally lift no more than ten pounds, frequently lift and/or carry less than ten pounds, stand and/or walk less than two hours and sit less than six hours in

an eight-hour workday.  AR 683.  Additionally, Plaintiff could occasionally reach, handle, finger, and feel.  He cited "moderate to severe neck pain with radicular symptoms" as the supporting medical findings.  AR 684.  Dr. David Field completed a similar Medical Source Statement days later, with similar findings as to Plaintiff's ability to lift and/or carry, stand and/or walk, and sit.  AR 951.  But he opined that Plaintiff could never climb, balance, stoop, kneel, crouch or crawl, and could occasionally feel.  Dr. Field did not cite to any supporting medical findings.  AR 952.

Dr. Swe, a rheumatologist, examined Plaintiff in November 2011 and diagnosed her with fibromyalgia.  AR 311.  In 2013, Plaintiff saw Dr. Swe on three occasions—January, February and July.  On each occasion, Dr. Swe interpreted Plaintiff's musculoskeletal images to show marginal erosion of the heads of a few metacarpals, mild narrowing and reparative change of a few distal interphalangeal joints, and mild bony proliferation changes involving the phalanges of a few digits.  He noted tenderness in Plaintiff's proximal interphalangeal and metacarpophalangeal joints with no swelling.  AR 1000, 1006, 1026.  Plaintiff's assessment included seronegative rheumatoid arthritis and fibromyalgia.  AR 1001-1002, 1007-1008, 1027-1028.  Dr. Swe referred Plaintiff to Randall Morrow, a physical therapist.  AR 1037.  In May 2012, Mr. Morrow trained Plaintiff on the use of a walker and ordered one for her use, with the goal of improving her walking tolerance.  AR 1036-1037.

Dr. Trinh's final assessment of Plaintiff was a Physical RFC Questionnaire in September 2013.  Therein, Dr. Trinh diagnosed Plaintiff with cervical and lumbar degenerative disc disease, fibromyalgia, rheumatoid arthritis, and migraine headaches.  He noted Plaintiff was taking Oxycodone which "may cause drowsiness or dizziness."  AR 1049.  When asked if Plaintiff used an assistive device, Dr. Trinh noted "[p]er patient, she uses a walker on occasion."  AR 1051.

3.  <u>Witness Testimony</u>

Plaintiff's husband, Mr. Davenport, testified at the first hearing.  He confirmed Plaintiff's last

day of work was March 1, 2010.  He heard Plaintiff complain all the time about the pain affecting

her work and observed the pain get progressively worse over the years.  His testimony about how

Plaintiff spent her days largely paralleled that of Plaintiff's.  AR 100-101.  He further testified that

Plaintiff spent most of the day in bed and Vicodin made her feel very dizzy.  AR 101.

### 4. Vocational Expert Testimony

Mr. Van Eck testified as a VE at the second hearing.  Based on Plaintiff's description of her

job duties, the VE determined that DOT 241.367-018 (loan interviewer) was the appropriate job

classification.  AR 82.

The ALJ presented a hypothetical to the VE, directing him to consider a person who could

lift ten pounds, sit for six hours and stand and walk for two hours in an eight-hour day, with a

sedentary RFC.  The VE opined that such person could perform her past work.  AR 82.

Plaintiff's counsel also presented the VE with hypotheticals.  He directed the VE to consider

the limitation set forth in Dr. Field's Medical Source Statement.  AR 82.  The VE agreed that

Plaintiff would not be able to perform at the sedentary level because the limitations do not permit

what is required to work a full time day.  AR 83.  The VE also agreed that based on Plaintiff's

testimony that she needs to recline for more than two hours a day, she could not perform her past

work or engage in any unskilled employment.  AR 84.

### 5. ALJ's Decision

A claimant is disabled under Title II if she is unable to engage in substantial gainful activity

because of a medically determinable physical or mental impairment that can be expected to result in

death or has lasted or can be expected to last for a continuous period of no less than 12 months.  42

U.S.C. § 423(d)(1)(A).  To encourage uniformity in decision making, the Commissioner has

promulgated regulations prescribing a five-step sequential process which an ALJ must employ to

8

evaluate an alleged disability.[4]

In the ALJ's second decision, he found that at step one, Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 1, 2010.  At step two, Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, and fibromyalgia.  AR 23.  At step three, Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Plaintiff had the RFC to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  She could lift ten pounds, sit for six hours and stand and walk for two hours in an eight-hour workday.  AR 24.  And at step four, Plaintiff was capable of performing past relevant work as a mortgage consultant because it did not require the performance of work-related activities precluded by her RFC.  Consequently, the ALJ concluded that Plaintiff was not disabled as defined under Title II of the Act.  AR 28.

In arriving at his decision, The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her symptoms "not entirely credible" for various reasons.  AR 25.  Briefly, they included generally positive examination results, images and diagnostic studies which show mild defects, physician opinions which lack supporting medical findings, Plaintiff's ability to engage in a breadth of daily activities, and failure to accept more aggressive treatment.  AR 25-28.

---

[4] "In brief, the ALJ considers whether a claimant is disabled by determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work. The claimant bears the burden of proof at steps one through four."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); 20 C.F.R. § 404.1520(a) (2010).

## II.  DISCUSSION

A.  *Legal Standards*

This Court reviews the Commissioner's final decision to determine if the findings are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 401 (1971)), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the Commissioner.  However, we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal citation and quotations omitted).  "If the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *see* 42 U.S.C. § 405(g) (2010).  But even if supported by substantial evidence, a decision may be set aside for legal error. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Moreover, an ALJ's error is harmless "when it was clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Soc. Sec. Admin*. 466 F.3d 880, 885 (9th Cir. 2006).

B.  *Analysis*

Plaintiff alleges the ALJ failed to properly assess evidence of her: (1) hand limitations, (2) use of an assistive device, (3) medication side effects, and (4) pain.  Opening Br. 16; Reply Br. 4. The Court addresses these contentions in turn.

1. <u>Hand Limitations</u>

Plaintiff avers the ALJ did not properly evaluate significant uncontroverted medical evidence of Plaintiff's hand limitations which precluded her from performing her past work.  Opening Br. 16-18; Reply 3-5.  Citing to the opinions of Drs. Trinh, Field, and Ha'eri, Plaintiff asserts that "use of her hands is limited to at least only occasionally is uncontroverted by every examining physician."  Opening Br. 17.  She takes particular issue with the ALJ's failure to discuss evidence from Dr. Swe, which show erosion of the hands and that her limitations are attributable to rheumatoid arthritis and fibromyalgia.  Opening Br. 17-18.  The Commissioner counters that because the evidence revealed only mild carpal tunnel syndrome, no error occurred.  Opp'n 6.

It is settled law that an ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician.  *Lester v. Chater,* 81 F.3d 821, 830-31 (9th Cir.1996).  If the medical opinion is contradicted, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record, for rejecting it.  *Id.*  But the ALJ "need not discuss *all* evidence presented" to him.  *Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1394–95 (9th Cir.1984) (emphasis in original).  He need only explain why *significant probative evidence* was rejected.  *Id.* at 1395 (emphasis added).

In his second decision, the ALJ explicitly discussed evidence from Drs. Trinh, Field and Ha'eri, and set forth reasons for giving little weight to their opinions.  The ALJ summarized Drs. Trinh's and Field's opinions (from their respective Medical Source Statements) that Plaintiff could occasionally reach, handle and finger, but stated they relied heavily on Plaintiff's subjective reporting of symptoms which were uncorroborated by objective findings in the record.  AR 27-28, 121.  He noted Dr. Trinh's brief reference to "moderate to severe neck pain with radicular symptoms" as the supporting medical findings and that Dr. Field "did not provide any supporting medical findings for his assessment as requested."  AR 28.  The ALJ also found that "multiple MRIs,

EMG and nerve conduction studies show . . . only mild abnormalities and . . . signs on examination do not support the extreme functional limitations [these physicians] outlined." AR 28, 121.

The ALJ's findings are supported by substantial evidence. Notably, the Medical Source Statement is a fill-in-the-blank and check-the-box form. Such forms are generally disfavored because they are conclusory and, in this case, devoid of analysis. *Cf.* 20 C.F.R. § 404.1527 (2010) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion.") In Dr. Trinh's case, his reference to neck pain with radicular symptoms, without more, does not support his opinion concerning Plaintiff's hand limitations. Additionally, in his September 2013 Physical RFC Questionnaire, Dr. Trinh circled "yes" when asked whether Plaintiff has "significant limitations in doing repetitive reaching, handling or fingering," but provided no explanation. AR 1051. [5] And in Dr. Field's case, his Medical Source Statement lacks any reference to supporting medical findings. AR 952.

With regard to Dr. Ha'eri, the ALJ gave little weight goes to that portion of the opinion that Plaintiff could "do simple grasping continuously and fine manipulation occasionally." AR 27, 121. The ALJ considered the opinion "overly restrictive" and based on a lack of objective findings on examination and the record as a whole. AR 27. Indeed, the examination section of Dr. Ha'eri's notes reference Plaintiff's cervical region and legs but lack any reference to Plaintiff's arms or hands. AR 621.

Undermining the treating physicians' opinions is the fact that despite her claims of pain, Plaintiff engaged in a breadth of daily activities which included: lifting a gallon of milk, watching television, going out to lunch, running errands and going to doctor appointments. AR 66-67. She did not heed medical advice to exercise and declined to pursue aggressive treatment, despite the

---

[5] The Court is mindful that the ALJ did not have the benefit of viewing the Questionnaire, which Dr. Trinh completed after the ALJ issued his second decision. But the Court must consider evidence added to the record by the Appeals Council even where that evidence was not before the ALJ. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

option to do so.  AR 68, 554, 627, 991.  Additionally, the ALJ found Plaintiff's treatment record to be generally positive: normal neurological examination results, diagnostic studies which show mild carpal tunnel syndrome but no indication that it limits Plaintiff's ability to work, and images and electrodiagnostic studies which show minor degenerative changes and mild abnormalities.  And there is substantial evidence in the record to support the ALJ's findings.  AR 554, 589, 609, 624-625, 713.  Contrary to Plaintiff's averment, the ALJ provided clear and legitimate reasons for rejecting the opinions of Drs. Trinh, Field, and Ha'eri.

The ALJ did not, however, discuss Dr. Swe's opinions.  While the ALJ was not required to discuss all evidence of Plaintiff's hand limitations, he could not reject significant probative evidence without reason.  *Vincent on Behalf of Vincent,* 739 F.2d at 1394–95; Social Security Ruling ("SSR")[6] 96-5p ("The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

In his 2013 reports, Dr. Swe noted tenderness in Plaintiff's proximal interphalangeal and metacarpophalangeal joints with no swelling.  AR 1000, 1006, 1026.  He interpreted Plaintiff's musculoskeletal images to show marginal erosion of the heads of a few metacarpals, mild narrowing and reparative change of a few distal interphalangeal joints, and mild bony proliferation changes involving the phalanges of a few digits.  AR 1001, 1007, 1027.  He assessed Plaintiff with having seronegative rheumatoid arthritis and fibromyalgia.  AR 1001-1002, 1008, 1028.  These reports lend credence to the treating physicians' opinions that Plaintiff could only reach, handle and finger occasionally (AR 684, 952, 621), which, in turn, show that Plaintiff could not perform the duties of a mortgage interviewer who must engage in frequent reaching and handling (DOT §241.367-018 (loan

---

[6] Social Security Rulings are "binding on ALJs."  *Terry v. Sullivan,* 903 F.2d 1273, 1275 n. 1 (9th Cir.1990).

interview), and, therefore, significantly probative.  Notably, the Council explicitly directed the ALJ, on remand, to address "additional medical evidence, especially that from Dr. Swe, and assess the severity of [Plaintiff's] impairment of fibromyalgia."  AR 129.  Yet the ALJ's second decision is devoid of any reference to Dr. Swe's reports and opinions.  Although the ALJ found Plaintiff has fibromyalgia (AR 23-24), he provides no reason for ignoring Dr. Swe's opinions regarding Plaintiff's hands.  The requirement that the ALJ consider Dr. Swe's opinions does not require that he adopt them.  But the failure to consider them was error.

Such error, however, was harmless.  *See Robbin*, 466 F.3d at 885.  The ALJ expressly considered evidence which show Plaintiff's hand limitations, but for the reasons discussed, gave them little weight.  In finding that Plaintiff was not disabled and could perform her past work given the RFC to perform the full range of sedentary work, the ALJ discussed objective and subjective evidence, explaining his rationale for rejecting or accepting them.  AR 26-28.  Viewing the record as a whole, the Court is not convinced that had the ALJ evaluated Dr. Swe's opinions as they pertain to Plaintiff's hand limitations, the outcome would have been different.  *Molina*, 674 F.3d at 1115 (explaining that a harmless error determination requires looking "at the record as a whole to determine whether the error alters the outcome of the case").

2.   Assistive Device

Plaintiff contends the ALJ failed to evaluate the use of an assistive device, namely the walker, which severely limits her sedentary work base.  Opening Br. 19; Reply 6.  The Commissioner counters that absent evidence showing a limitation requiring such use, the ALJ was not required to account for the walker.  Opp'n 7.   The inquiry begins, again, with whether such evidence is significantly probative.

The use of a "hand-held assistive device" or walker is probative of a Plaintiff's functional limitations if it is "medically required."  SSR 96–9p.  This means "there must be medical

documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." *Id.*  In this case, no such medical documentation exists.

Reference to a walker appear in Mr. Morrow's notes from May 2012.  He trained Plaintiff for a walker, noting that it "made her gait smoother" and "gave her less pain," and ordered one for her use.  AR 1036.   Nearly a year later, at the second hearing, Plaintiff testified to using the walker for about nine months and that it has helped.  AR 73.  And another year later, Dr. Trinh stated on his September 2013 Physical RFC Questionnaire that "[p]er patient, she uses a walker on occasion." AR 1051.  Viewed separately or together, the evidence here does not show that an assistive device is medically required.

First, a therapist—Mr. Morrow—is not an "acceptable medical source[] to establish whether [Plaintiff] ha[s] a medically determinable impairment[]."  20 C.F.R. § 404.1513(a).  At most, his opinion can "show the severity of [Plaintiff's] impairment(s) and how it affects [Plaintiff's] ability to work," *id.* § 404.1513(d), but is not dispositive of the need for an assistive device. Furthermore, his assessment here falls short of describing the circumstances for which a walker is needed and, therefore, does not meet the requirements of SSR 96-9p.  Second, Plaintiff's own self-serving statements are not medical documentation.  Finally, Dr. Trinh's brief statement about Plaintiff's use of a walker, based on her own reporting, is neither one of recommendation nor prescription.  He expressed no professional opinion about Plaintiff's need for an assistive device and described no circumstances for which such device would be needed.  SSR 96–9p; *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quotations and citation omitted).  Consequently, absent significantly probative

1   evidence that Plaintiff's use of a walker was medically necessary, the ALJ did not err in rejecting

2   such evidence.

3       3.   Medication Side Effects

4       Plaintiff asserts the ALJ failed to properly assess the medication side effects by "ignoring the

5   evidence."  Opening Br. 20-21.  The ALJ should have, in Plaintiff's view, developed the record

6   further to better understand her condition.  Opening Br. 21; Reply 8.  The Commissioner refutes any

7   error, noting the ALJ provided specific and legally sufficient reasons when he discussed Plaintiff's

8

9   credibility and the lack of evidence to support her complaints.  Opp'n 8.

10      Among the factors to be assessed in an RFC determination are medication side effects.  SSR

11   96-8p.  There are two different approaches in the Ninth Circuit regarding an ALJ's duty to consider

12   medication side effects.  The first approach requires that an ALJ consider all factors that might have

13   a significant impact on an individual's ability to work, including the medication side effects.

14   *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir.1993) (citing *Varney v. Secretary of HHS*, 846 F.2d

15   581, 585 (9th Cir.1987) (superseded by statute on other grounds).  An ALJ may not reject a

16   claimant's testimony as to subjective limitations of side effects without making specific findings

17   similar to those required for excess pain testimony.  *Varney*, 846 F.2d at 585.

18

19      The second approach provides that in order for an ALJ's failure to discuss medication side

20   effects to be error, the side effects must be a contributing factor in a claimant's inability to work.

21   *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir.2001) (no error in a question to a vocational expert

22   that did not include information about side effects because "[t]here were passing mentions of the

23   side effects of Mr. Osenbrock's medication in some of the medical records, but there was no

24   evidence of side effects severe enough to interfere with Osenbrock's ability to work"); *Bayliss v.*

25   *Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (failure to expressly address medication side effects

26   is not error where there was no record support for side effects); *Miller v. Heckler*, 770 F.2d 845, 849

27

28

1

2

(9th Cir.1985) (claimant had the burden of producing evidence that his use of prescription narcotics impaired his ability to work but failed to do so).

3

4

5

6

7

8

The Court finds no error under either approach.  Contrary to Plaintiff's assertion that the ALJ "ignored" the evidence, the ALJ expressly addressed Plaintiff's medication side effects, noting the medications caused "some dizziness, difficulty maintaining focus, nausea, and weight gain."  AR 25.  But, he found Plaintiff "not entirely credible," setting forth reasons why, and stated that the record does not corroborate Plaintiff's testimony about the medication side effects.

9

10

11

12

13

14

15

16

17

18

19

20

Indeed, reference to the medication side effects appeared in a few physicians' notes.  But the references were no more than passing mentions or inconclusive as to the side effects impact on Plaintiff's ability to work.  Dr. Gupta's notes from Plaintiff's April 2009 visit stated succinctly: "Medication side effects discussed: Nausea, drowsiness" and "[p]ositive for dizziness."  AR 477-478.  And, again, in June 2009, a review of Plaintiff's system showed "[p]ositive for dizziness (little bit due to Gabapentin)."  AR 444.  In her 2013 reports, Dr. Swe noted Plaintiff "forget[s] things" and prescribed her with folic acid "to prevent side effects of methotrexate."  AR 1026, 1028, 1006, 1008, 1000-10001.  Dr. Trinh noted in his September 2013 Physical RFC Questionnaire that "oxycodone . . . may cause drowsiness or dizziness."  AR 1049.  And, Plaintiff's husband testified to seeing her get dizzy from the Vicodin and hearing her complaint about how the pain affected her work.  AR 100-101.

21

22

23

24

25

26

27

These evidence do not show how or if the medication side effects significantly impacted or contributed to Plaintiff's inability to work.  Notes from Drs. Gupta, Swe, and Trinh show, at most, that Plaintiff's experienced medication side effects, but not that the side effects impaired Plaintiff's ability to work.  *See, e.g., Meanel v. Apfel,* 172 F.3d 1111 (9th Cir. 1999) (treating physician's note that "medications to control [claimant's] pain also causes [sic] decreased concentration skills. . . . falls short of an informed opinion that [claimant's] pain and diminished concentration skills would

28

significantly interfere with her ability to work"). Their notes contain no discussion of how, for example, Plaintiff's dizziness or forgetfulness affected her ability to perform her job functions. Additionally, while testifying to the side effects, Plaintiff explained that she would be in greater pain without the medications, and that they brought her pain level down from a nine to a five or six. AR 69. Consequently, the ALJ did not err and was not required to develop the record further. *Ludwig v. Astrue,* 681 F.3d 1047, 1055 n. 30 (9th Cir. 2012) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.") (quotations omitted).

4.   Complaints of Pain

Finally, Plaintiff contends the ALJ failed to properly assess evidence of Plaintiff's pain. Opening Br. 22-27; Reply 9-11. The Commissioner avers the ALJ made specific credibility findings, supported by the record, which adequately discredited Plaintiff's subjective complaints of pain. Opp'n 8-11.

Under Title II, a claimant's statement of pain or other symptoms is not conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(a) (2010). "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotations omitted). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1014-15; *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir.2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each."); *Brown-Hunter v. Colvin*, --- F. 3d ---, 2015 WL 4620123 *5 (9th Cir. Aug. 4, 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").  Factors an ALJ may consider include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ must also give consideration to the factors enumerated in SSR 96-7p.[7]  "It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible.  He must either accept [claimant's] testimony or make specific findings rejecting it."

---

[7] Social Security Ruling 96-7p states, in relevant part:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (citation and quotations omitted).

Because no evidence suggests Plaintiff was malingering, the ALJ was required to provide clear and convincing reasons for rejecting the pain evidence.  Finding Plaintiff "not entirely credible," the ALJ cited to numerous evidence and explained why they do not support Plaintiff's pain allegations.  With regard to Plaintiff's neck and back pain, the ALJ found the conditions did not significantly worsen since Plaintiff stopped working.  AR 25.  He discussed various examinations, in detail, from 2009 to 2010, and found they showed an improvement in Plaintiff's condition.  AR 26.  He noted that despite Plaintiff's continued complaints, no new treatment was warranted.  That Plaintiff's complaints were generally unsupported on examinations proved questionable to the ALJ, who further found that Plaintiff's refusal to proceed with more aggressive treatment suggested she may have overstated her symptoms.  AR 27.  The ALJ also discussed Plaintiff's ability to engage in a breadth of daily activities which included lifting a gallon of milk, watching television, going out to lunch, running errands and going to doctor appointments, as evidence contrary to Plaintiff's allegations of disabling symptoms and limitations.  AR 28.  66-67.  He thus gave clear and convincing reasons, supported by specific findings, in rejecting Plaintiff's pain evidence, and considered the applicable SSR 96-7p factors.

Plaintiff also contends the ALJ failed to consider testimony from Plaintiff's husband.[8]  The Commissioner does not dispute that the ALJ was silent on Mr. Davenport's testimony, but contends the ALJ is not required to explicitly discuss the testimony because he gave germane reasons for rejecting similar testimony from Plaintiff.  Opp'n 12.

"[C]ompetent lay witness testimony *cannot* be disregarded without comment[.]"  *Molina v.*

[8] Plaintiff cites to the ALJ's first decision, which states in relevant part: "The undersigned has also considered the testimony of Corvin Davenport, the claimant's husband, but finds it less than credible on the basis of the other evidence."  AR 121.  The Court, however, does not review the ALJ's first decision as it was vacated by the Council.  AR 128.

1   *Astrue,* 674 F.3d 1104, 1114 (9th Cir. 2012) (quotations omitted).  Before discounting such

2   testimony, "the ALJ must give reasons that are germane to each witness."  *Id.* (quotations omitted).

3   But the ALJ is not required to "discuss every witness's testimony on a[n] individualized, witness-by-

4   witness basis.  Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the

5   ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Id.*

6       As Plaintiff's husband, Mr. Davenport could and did provide competent testimony.  *See* SSR

7   06-03p (while without power to "establish the existence of a medically determinable impairment,"

8   sources which are not acceptable medical sources (e.g., spouses) "may provide insight into the

9   severity of the impairment(s) and how it affects the individual's ability to function").  The ALJ

10  silence's about his testimony was thus error.  *See Molina,* 674 F.3d at 1114 (finding that while the

11  ALJ's rationale included reference to third party statements which support the claimant, such

12  reference does not satisfy the rule that witness testimony "*cannot* be disregarded without comment")

13  (quotations omitted)).  But the error was harmless.  Mr. Davenport testified about Plaintiff's pain

14  and the dizziness from her Vicodin medication.  His testimony paralleled that of Plaintiff's such that

15  the evidence which discredited her testimony could be used to discredit his.  *Id.* at 1122 ("failure to

16  comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to

17  in discrediting [the claimant's] claims also discredits [the lay witness's] claims") (quotations

18  omitted)).

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

III.  CONCLUSION

The Court finds that substantial evidence supported the ALJ's determination that Plaintiff was not disabled.  While the determination was not free of legal error, such errors were harmless.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of Court is DIRECTED to enter judgment in favor of the Commissioner and against Plaintiff.

IT IS SO ORDERED.

Dated:   **September 14, 2015**          **/s/ Sandra M. Snyder**
UNITED STATES MAGISTRATE JUDGE